Troy P. Foster #017229
Megan Weides #033552
Haley R. Carr #035804
**The Foster Group, PLLC**
902 W. McDowell Road
Phoenix, Arizona 85007
Tel: 602-461-7990
tfoster@thefosterlaw.com
mweides@thefosterlaw.com
hcarr@thefosterlaw.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Kotora, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> Highland Cabinetry, Inc., an Arizona corporation, <br><br> Defendant. | Case No.: 2:22-cv-00441-DWL <br><br> **SECOND AMENDED COMPLAINT** <br><br> **(Jury Trial Demanded)** |

For his Complaint against Defendant Highland Cabinetry ("Company" or "Highland"), Plaintiff Daniel Kotora ("Plaintiff" or "Kotora") alleges as follows:

## Introduction

The Company terminated Mr. Kotora, 66 years old at the time, two weeks after he disclosed that he had a tumor on his lung and needed to take time off. The Company did not grant his request for leave. The Company did not engage in discussions about an accommodation. Instead, it fired him and refused to pay him wages he had already earned. And it promptly replaced him with someone much younger with far less experience.

The Company's conduct is precisely what Congress intended to prohibit and penalize when enacting the Americans with Disabilities Act, the Family Medical Leave Act, and the Age Discrimination and Employment Act.

**Parties and Jurisdiction**

1. Plaintiff Daniel Kotora is an individual residing in Maricopa County, Arizona.
2. At all times relevant to this Complaint, the Company was a corporation authorized to conduct, and was conducting, business in Maricopa County, Arizona.
3. The acts and omissions forming the basis of this Complaint occurred in Maricopa County, Arizona.
4. The Company has 50 or more employees.
5. The Company is not exempt from the Family Medical Leave Act ("FMLA"), the Americans with Disabilities Act, as amended ("ADA" or "ADAAA"), or the Age Discrimination in Employment Act of 1967 ("ADEA").
6. The Company is an employer as defined by 29 U.S.C. § 2611(4), 42 U.S.C. § 12111(5), 29 U.S.C § 630(b).
7. Plaintiff was an employee as defined by 29 U.S.C § 2611(2), 42 U.S.C. § 12111(4), and 29 U.S.C. § 630(f).
8. Plaintiff filed a Charge of Discrimination against the Company with the EEOC on or about February 6, 2022. See Charge No. 540-2022-01793, attached as Exhibit 1.
9. On April 27, 2022, the EEOC issued Plaintiff a Notice of Right to Sue, which is attached as Exhibit 2.
10. Plaintiff's Complaint has been filed within 90 days from receipt of authorization to bring a civil action.
11. Plaintiff has exhausted his administrative remedies.

12. Jurisdiction and venue are proper in this Court.

**Mr. Kotora's Employment History and Performance**

13. At all times relevant to this Complaint, Kotora was an employee of Defendant.

14. The Company hired Mr. Kotora as its Sales Manager in March 2018.

15. Mr. Kotora was a fulltime employee throughout his tenure.

16. The Company hired Mr. Kotora, in part, because of his significant experience in sales.

17. Mr. Kotora's sales constituted approximately 35-39% of the Company's gross sales.

18. During Mr. Kotora's tenure, the Company expanded and grew its sales significantly.

19. Mr. Kotora was critical to the Company's growth and success during his tenure.

20. In fact, Mr. Kotora assisted the Company in areas outside of sales.

21. In 2018, Mr. Kotora oversaw the selection, negotiation, and implementation of the Company's phone, internet, and security systems.

22. Mr. Kotora obtained and purchased the Company's website domain name (www.highlandcabinetry.com) that it currently uses nationwide.

23. After the Company's accounting department made several unsuccessful online attempts to submit its PPE application, Mr. Kotora facilitated and oversaw the successful application of the Company's PPE funds by working directly with the bank representative in person. To this end, the Company received $224,000 in PPE funds.

24. Mr. Kotora oversaw the design, manufacture, and installation of significant visible freeway and truck signage for the Company.

25. Mr. Kotora supervised the Company's process in successfully obtaining its KCMA A161.1 Quality Certification.

26. Mr. Kotora developed the training and procedures for onboarding large clients.
27. Mr. Kotora negotiated a larger working space for the Company, utilizing his relationship with a neighboring business that he partnered with.

### Mr. Kotora's Illness and Termination

28. After suffering from various symptoms, Mr. Kotora went to his doctor in August and September of 2021.
29. On September 3, 2021, Mr. Kotora informed the Company that he had a tumor on his lung.
30. In fact, at that time, Mr. Kotora presented the Company with medical records about the condition.
31. On September 3, 2021, Mr. Kotora informed the Company that he would need treatment.
32. At around the same time, Mr. Kotora presented the Company with a work plan such that he could take time off to deal with his health but ensure that work was being completed.
33. After the disclosure, the Company did not provide nor offer Mr. Kotora time off.
34. After the disclosure, the Company did not engage with Mr. Kotora about possible accommodations.
35. Instead, the Company terminated Mr. Kotora's employment two weeks after the disclosure of his serious medical condition.
36. During the termination meeting, Mr. Kotora was presented with reasons that are demonstrably false.

### Earnings and Late/Inadequate Payments

37. During his employment, Mr. Kotora earned approximately $850,000 each year.

4

38. At his termination, the Company executed a document to provide Mr. Kotora $20,000 per month for five months.
39. These payments represented significantly less than Mr. Kotora's compensation with the Company.
40. The Company failed to pay the monthly payments completely and/or in a timely manner.
41. At his termination, Mr. Kotora had earned and was entitled to approximately $18,000 in commissions.
42. The Company failed to pay these commissions.
43. At his termination, Mr. Kotora was entitled to approximately $1,250 in unpaid salary.
44. The Company failed to pay these wages.
45. The Company had no good-faith basis for withholding the earned commissions or the salary.

## Legal Claims

### Count One:  Family Medical Leave Act (Interference)

46. The Company is a covered employer under the statute.
47. At the time of his illness, Mr. Kotora had been employed with the Defendant for more than a year.
48. At the time of his illness, Mr. Kotora had worked more than 1250 hours in the previous year.
49. Mr. Kotora suffered from a serious medical condition in September of 2021.
50. As such, Mr. Kotora was a qualified employee under the statute.
51. The Company interfered with and denied Mr. Kotora's right to take statutorily-protected leave under the FMLA.
52. The Company's actions were intentional.
53. The Company's actions damaged Mr. Kotora.

1  54. Mr. Kotora is entitled to back pay, front pay, consequential damages, liquidated damages, and attorneys' fees and costs.

### Count Two: FMLA Retaliation

55. Mr. Kotora reincorporates all allegations in paragraphs 1-~~47~~ <u>54</u>, as well as the Introduction, as if fully set forth here.

56. Within two weeks of information the Company of his serious medical condition and need for leave, the Company terminated Mr. Kotora.

57. In terminated his employment, the Company retaliated against Mr. Kotora for requesting statutorily-protected leave under the FMLA.

58. The Company's actions were intentional.

59. The Company's unlawful actions damaged Mr. Kotora.

60. Mr. Kotora is entitled to back pay, front pay, consequential damages, liquidated damages, and attorneys' fees and costs.

### Count Three: Violations of Arizona Wage Laws

61. Mr. Kotora reincorporates all allegations in paragraphs 1-~~53~~ <u>60</u>, as well as the Introduction, as if fully set forth here.

62. Mr. Kotora was an employee pursuant to Arizona wage laws.

63. The Company was an employer pursuant to Arizona wage laws.

64. The Company owed, and still owes, Mr. Kotora earned commissions in the amount of $18,000.

65. The Company owed, and still owes, Mr. Kotora unpaid and earned salary in the amount of $1,250.

66. The Company has failed to pay Mr. Kotora these wages.

67. The Company has no good-faith basis for its failure to pay Mr. Kotora.

68. As such, Mr. Kotora is entitled to the base wages and treble damages in the amount of $57,750.

69. Mr. Kotora is also entitled to his attorneys' fees and costs.

### Count Four: Breach of Contract

70. Mr. Kotora reincorporates all allegations in paragraphs 1-~~62~~ <u>69</u>, as well as the Introduction, as if fully set forth here.
71. The Company executed a post-employment agreement with Mr. Kotora on or around September 17, 2021.
72. The Company's representative signed the agreement on its behalf.
73. The agreement obligates the Company to pay Mr. Kotora $20,000 per month in exchange for the restrictive covenants.
74. Mr. Kotora has abided by the terms of the agreement.
75. The Company has made partial payments pursuant to the agreement.
76. However, the Company has failed to make complete and/or prompt payments, as outlined in the agreement.
77. The Company has breached its duty to Mr. Kotora.
78. Mr. Kotora is entitled to payments pursuant to the agreement.
79. Mr. Kotora is entitled to his attorneys' fees and costs pursuant to the agreement and Arizona law.

### **Count Five: ADA Discrimination**

80. Plaintiff reincorporates allegations in paragraphs 1-79, as well as the Introduction, as if fully set forth here.
81. At all relevant times, Mr. Kotora had an impairment that substantially limited one or more life activities.
82. Mr. Kotora's pulmonary tumor, the treatment of it, and the long-term effects and continued treatment of it substantially affected his life activities, including breathing, speaking, and exercising.
83. Mr. Kotora's condition was not singular, nor temporary, and has no beginning and ending points.
84. Mr. Kotora continues to be treated by physicians for this condition, and that treatment has no targeted end date as his condition is unpredictable.

85. At all relevant times, Mr. Kotora was qualified to perform the essential functions of his job with or without a reasonable accommodation.
86. Mr. Kotora did, in fact, have a qualifying disability pursuant to the ADA.
87. The Company knew of Mr. Kotora's medical condition.
88. Mr. Kotora made requests for accommodations.
89. Defendant failed to have a discussion with Mr. Kotora about his condition and whether an accommodation would be appropriate.
90. Defendant failed to engage in the interactive process.
91. Within 2 weeks of disclosing his medical condition, the Defendant terminated Mr. Kotora.
92. The timing of Mr. Kotora's disclosure and termination is evidence that Mr. Kotora was terminated because of his medical condition and need for an accommodation.
93. Mr. Kotora is entitled to backpay, front pay, compensatory damages, punitive damages, and his reasonable attorneys' fees and costs.

### Count Six: ADA Retaliation

94. Mr. Kotora reincorporates allegations in paragraphs 1-93, as well as the Introduction, as if fully set forth here.
95. Mr. Kotora had a qualifying disability.
96. Mr. Kotora engaged in protected activity when he requested an accommodation for that disability.
97. Defendant terminated Mr. Kotora 2 weeks after engaging in protected activity.
98. Mr. Kotora is entitled to back pay, front pay, compensatory damages, punitive damages, and his reasonable attorneys' fees.

### Count Seven: Age Discrimination

99. Mr. Kotora reincorporate allegations in paragraphs 1-98, as well as the Introduction, as if fully set forth here.

100. Mr. Kotora is in the protected class of age by being over 40 years old.
101. Mr. Kotora was performing his job without any issues.
102. In fact, Mr. Kotora was a top performer and received rave reviews from the Defendant about his performance.
103. Once the Defendant terminated Mr. Kotora, he was replaced by a younger candidate (under 40 years old) with much less experience.
104. Mr. Kotora is entitled to back pay, front pay, compensatory damages, and his reasonable attorneys' fees.

## CONCLUSION

**THEREFORE**, Mr. Kotora respectfully requests the following relief:

A. A judgment in his favor against the Defendant;
B. An award of back pay, front pay, and compensatory damages;
C. Liquidated, punitive, and treble damages;
D. Pre- and post-judgment interest on award;
E. Reasonable attorneys' fees and costs; and
F. All other appropriate equitable relief.

**DATED** this 26th day of July, 2022.

**The Foster Group**

  /s/ Troy P. Foster
Troy P. Foster
Megan Weides
Haley R. Carr
902 W. McDowell Road
Phoenix, Arizona 85007
*Counsel for Plaintiff*